UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JADE KINDERMANN, Next
Friend of L.K., a Minor,

                                Case Number 16-11749
        Plaintiff,             Honorable David M. Lawson

v.

LFT CLUB OPERATIONS COMPANY, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Jade Kindermann was carrying her 22-month old son when she tripped over uneven pavement in the parking lot of the Lifetime Fitness Center in Rochester, Michigan. Jade's fall left her unscathed, but her son suffered serious injuries when she landed on him. Jade sued the owner of the facility on her son's behalf, alleging negligence and premises liability under state law. The facility owner, LFT Club Operations Company, Inc., removed the case to this Court and, after discovery concluded, filed a motion for summary judgment on three grounds. Only one of the grounds has merit: that the parking lot defect was open and obvious, and therefore the defendant had no duty to warn its customer of the dangerous condition. Because one meritorious ground is all it takes, the Court will grant the motion for summary judgment and dismiss the complaint.

I.

Defendant LFT Club Operations Company, Inc. is a Minnesota corporation that operates a chain of fitness centers in several states. Its customers subscribe to memberships, which allows them

access to the facilities. Jade Kindermann joined the Rochester, Michigan facility and signed a membership agreement, which included a waiver of liability.

On February 28, 2014, Jade arrived at the center with her 21-month old son, L.K. She parked in the lot and headed toward the front entrance of the club. The parking lot includes a concrete motorcycle parking pad. Photographs of the parking lot show that the asphalt parking lot and the concrete motorcycle parking pad do not align perfectly: the concrete pad juts a couple inches above the asphalt surface. It appears that one side of the slab has been chiseled down to make the transition between the two surfaces less dramatic, suggesting that the defect was well-known to the owner.

Jade carried her son, a diaper bag, and a gym bag across the asphalt parking lot toward the front entrance of the club. As she was crossing the parking lot, she caught her toe on the motorcycle parking pad lip and fell with L.K. in her arms. Both mother and son fell onto the concrete slab. L.K.'s injuries appeared to be limited to his forehead and mouth. Jade took L.K. immediately to their family doctor about a half mile away. The physician cleaned L.K.'s superficial wounds, and told Jade that the wounds would heal without further medical attention. Jade noticed that L.K. would cry whenever she touched his right foot, but the doctor did not notice anything out of the ordinary at that time.

Jade returned home with L.K., but when she removed his jumper to change his diaper, she noticed his right leg was swollen. She immediately took him to the hospital. X-rays showed that his right femur was broken. That same evening, he was transported to a hospital to undergo surgery on his leg. Two screws were used to help manipulate the bone back into place. L.K. wore a cast for five-and-a-half weeks and some time later had a surgery to remove the screws in his leg. L.K. underwent five weeks of physical therapy to relearn how to walk. L.K.'s therapy went well, but

subsequent physical therapy was needed because L.K. was having difficulty running correctly. According to Jade, her son appears to have recovered from his broken leg and is now left only with a scar on his right leg.

The plaintiff filed the complaint on February 12, 2016 in the Wayne County, Michigan circuit court, and the defendant removed the case to this Court on May 17, 2016, alleging diversity of citizenship. Discovery was completed sometime before February 15, 2017, when the defendant filed its motion for summary judgment. The Court heard oral argument on May 2, 2017.

II.

The defendant advances three substantive arguments: (1) that the plaintiff waived her right to sue the club when she signed the membership agreement that said as much; (2) that the change in elevation was not a "defect" in the parking lot that would trigger premises liability under Michigan law; and (3) that the condition of the parking lot was open and obvious to the average person, and therefore there was no duty imposed on the club owner to its customers to warn or otherwise protect them. The defendant says that there are no fact issues that need resolving before addressing these issues, and therefore it is entitled to a judgment as a matter of law under Federal Rule of Civil Procedure 56(a).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the party opposing the motion contends facts

are in dispute, she may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court then "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). "Summary judgment . . . is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson*, 477 U.S. at 242).

This case is before the Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and the plaintiff's claims are based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). All agree that Michigan law applies to this dispute. If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data,'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)), which can include "the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*," *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotation marks and citation omitted).

A.

As an initial matter, the parties appear to agree that it is Michigan's premises liability law that governs this dispute, and not the more general rules that apply to other negligence cases. Michigan courts distinguish "between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 692, 822 N.W.2d 254, 258 (2012) (citing *James v. Alberts*, 464 Mich. 12, 18-19, 626 N.W.2d 158, 162 (2001)). If the plaintiff alleges an injury resulting from a dangerous condition on the defendant's property, "the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Ibid*. (citing *James*, 464 Mich. at 18-19, 626 N.W.2d at 162)).

The plaintiff included a negligence count in her complaint. But she now acknowledges that the injury occurred because of a condition on the defendant's land, rather than the defendant's conduct. Because an ordinary negligence claim must be "grounded on an independent theory of liability based on the defendant's conduct" *Laier v. Kitchen*, 266 Mich. App. 482, 493, 702 N.W.2d 199, 208 (2005), which is absent here, the Court will dismiss the negligence count in the complaint (Count II).

B.

When Jade Kindermann joined the Life Time Fitness club, she signed a membership agreement that states that she "agree[d] not to sue Life Time for, and waive[d], any claims, . . . causes of action, . . . or any other alleged liabilities or obligations of any kind or nature . . . for any Injuries to me, Minor Member(s), Other Member(s), or Guest(s) in the Use of Life Time Premises and Services which arise out of, result from, or are caused by any negligence of Life Time, me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person. . . ." She purported

to sign that membership agreement "[o]n behalf of [her]self and [her] spouse/partner, children/Minor Members, Other Members, Guests, parents, guardians, heirs, next of kin, personal representatives, heirs and assigns." The defendant insists that this waiver language bars this lawsuit, which Jade brought on behalf of her son.

There are a couple of problems with the defendant's argument. For one, the Michigan Supreme Court has held that a waiver of liability signed by parent on behalf of her child is unenforceable." *Woodman ex rel. Woodman v. Kera LLC*, 486 Mich. 228, 785 N.W.2d 1 (2010). Recognizing this major barrier to its argument, the defendant attempts to circumvent it by characterizing the waiver language as a covenant not to sue. As such, the defendant asserts, the agreement does not extinguish the minor's claims, but instead only amounts to a promise not to sue with respect to an existing claim. The defendant stresses the point that the agreement did not waive L.K.'s rights; instead the covenant not to sue is a bar only on Jade Kindermann's right to bring the suit on her son's behalf.

It is true that Michigan law recognizes a difference between a release of liability and a covenant not to sue. "A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim." *J & J Farmer Leasing, Inc. v. Citizens Ins. Co. of Am.*, 472 Mich. 353, 357-58, 696 N.W.2d 681, 684 (2005). "The difference primarily affects third parties, rather than the parties to the agreement." *Id*. at 358, 696 N.W.2d at 684 (citing *Theophelis v. Lansing Gen. Hosp.*, 430 Mich. 473, 492 n.14, 424 N.W.2d 478 (1988) and *Industrial Steel Stamping, Inc. v. Erie State Bank*, 167 Mich. App. 687, 693, 423 N.W.2d 317 (1988)). That difference is immaterial here, however, because both a covenant not to sue and

a release are contracts, and *Woodman* emphatically reminds us that a parent cannot contract away a minor child's rights.

The defendant's technical argument misses the mark for a number of other reasons as well. First, Jade Kindermann is not the actual plaintiff here; she is merely a legal functionary, serving as L.K.'s next friend. A next friend is "[s]omeone who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian." Next Friend, Black's Law Dictionary (10th ed. 2014). As the defendant notes, L.K.'s claims are not barred by the membership agreement and he is therefore free to bring his claims, which in this case is with the assistance of a next friend. Second, a covenant not to sue is a contractual agreement not to bring an action based on an *existing claim*. When Jade Kindermann signed the membership agreement, there was no existing claim between the parties. The defendant has not offered any support for the proposition that a covenant not to sue can be made pre-injury. And finally, as the defendant concedes, regardless of how it characterizes its waiver provision, the final effect of the document is the same: a pre-injury waiver of liability on behalf of a minor. A contract term by any other name that is a pre-injury waiver of a minor's rights is still barred by *Woodman*.

C.

The defendant also contends that the elevated portion of the motorcycle parking pad was an intentional feature of the parking lot, and therefore was not a "defect." The defendant believes that the absence of a defect is fatal to the plaintiff's claim for premises liability.

This is a curious argument. It appears to be based on a misreading of *Jepson v. Edward F. Sparrow Hosp. Ass'n*, 2008 WL 214781 (Mich. Ct. App. Jan. 24, 2008), in which the Michigan

Court of Appeals discussed the open and obvious rule as applied to a claim that a four-inch-wide expansion joint rendered defective the walking surface of a parking structure. The panel found that the condition was open and obvious and dismissed the plaintiff's claim. The court analogized to Michigan's so called "two-inch rule," which restored "immunity to municipalities for injuries caused by sidewalk defects less than two inches in height." *Id*. at *1. The panel reasoned that the legislature's decision to limit liability to sidewalk defects less than two inches suggested a "legislative determination that no liability should follow from small defects in walking surfaces." *Ibid*. (citing Mich. Comp. Laws § 691.1[402a(3)]). Finally, in *dictum*, the *Jepson* panel observed that an expansion joint was not a defect in the same way as a pothole in a parking lot. *Id*. at *2.

The *Jepson* decision was based on an analysis of the open and obvious doctrine. The panel made references to "defects," but those references were part of the open and obvious discussion. To the extent that the *Jepson* opinion can be read as creating a new requirement in the premises liability analysis, it does not appear that any court has cited *Jepson* for such a proposition (or any proposition) in the nine years since it was decided. The defendant erroneously parsed out a few words in an unpublished court of appeals decision and construed them as an independent requirement that a plaintiff must show that a defect exists before liability can be established. No such requirement exists.

To take the defendant's argument to its logical extreme, a landowner could avoid liability for any hazard on his property by the mere expedient of insisting that it was created intentionally, and therefore was not a "defect." Such a rule would countenance a host of unreasonable behaviors, even to the extent of setting traps for the unwary trespasser. The law does not authorize such conduct. *See Petrak v. Cooke Contracting Co.*, 329 Mich. 564, 568, 46 N.W.2d 574, 576 (1951) (A

"defendant owes no duty [to trespassers] except that it must not wantonly or intentionally injure them or expose them to injury.").

Instead, to establish a *prima facie* case of negligence under Michigan premises liability law, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449, 506 N.W.2d 175 (1993). In this case, Jade Kindermann and her minor son L.K. were the defendant's invitees on February 28, 2014. "The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 597, 614 N.W.2d 88, 92 (2000). "A possessor of land is subject to liability for physical harm caused to [its] invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger." *Ibid*. Whether the hazard was created intentionally by the landowner or not has no bearing on the elements of a premises liability claim.

D.

Finally, the defendant contends that it did not owe the plaintiff a duty of reasonable care concerning the elevated portion of the motorcycle pad in the parking lot because it was open and obvious. The plaintiff argues that the open and obvious doctrine does not apply in this case because

L.K. did not have the capacity to evaluate the surface irregularity where the motorcycle parking pad joined the asphalt parking lot.

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001) (citing *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 609, 537 N.W.2d 185 (1995)). But that duty "does not generally encompass removal of open and obvious dangers." *Kessler v. Visteon Corp.*, 448 F.3d 326, 331 (6th Cir. 2006) (internal marks and citations omitted). The so called "open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Lugo*, 464 Mich. at 516, 629 N.W.2d at 386.

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v. Lanctoe*, 492 Mich. 450, 461, 821 N.W.2d 88, 94-95 (2012). However, "landowners owe a heightened duty of care to child invitees." *Bragan ex rel. Bragan v. Symanzik*, 263 Mich. App. 324, 333, 687 N.W.2d 881, 888 (2004). Courts must consider "whether a dangerous condition would be open and obvious to a reasonably careful minor; that is, whether the minor would discover the danger and appreciate the risk of harm." *Id*. at 335, 687 N.W.2d at 889. "This is an *objective standard*, calling for an examination of the 'objective nature of the condition of the premises at issue.'" *Hoffner*, 492 Mich. at 461, 821 N.W.2d at 94-95 (quoting *Lugo*, 464 Mich. at 523-24, 629 N.W. at 390) (emphasis in original).

According to the Michigan courts, this standard is quite strict. For instance, although there is no precedential value in an appellate court's leave-denied decision, the Supreme Court denied an

application for leave to appeal in a case where summary judgment was granted against a blind man who slipped on a wet bathroom floor in a restaurant. *Sidorowicz v. Chicken Shack, Inc.*, 469 Mich. 912, 673 N.W.2d 106 (2003); *Sidorowicz v. Chicken Shack, Inc.*, 2003 WL 140127 (Mich. Ct. App. Jan. 17, 2003) ("Plaintiff was unable to see this condition because of his blindness, but this condition would have been open and obvious to an ordinarily prudent person.").

The Michigan courts have been unyielding in their objective standard, except in the case of children. In *Bragan*, an eleven-year-old boy climbed a "Jacob's Ladder" at the defendant's berry farm. *Bragan*, 263 Mich. App. at 326, 687 N.W.2d at 883. A Jacob's Ladder is a rope and plank ladder that is designed to be difficult to climb. *Ibid*. A climber attempts to scale the ladder and ring a bell at the top before falling on the piled straw below. *Ibid*. A boy climbed the Jacob's Ladder and eventually fell and broke both of his wrists because there was an insufficient amount of straw beneath him to break his fall safely. *Ibid.*, 687 N.W.2d at 883-84 (2004). The *Bragan* panel noted that the Michigan Supreme Court has not addressed whether invitors owe a heightened duty to child invitees. *Id.* at 330-31, 687 N.W.2d at 886. The court traced the history of the heightened standards that are owed to child trespassers and child licensees and concluded that a heightened duty also applies to child invitees. *Id*. at 333-35, 687 N.W.2d at 889-89.

The defendant argues that the inquiry in this case is still limited to the adult standard, however, because L.K. was being carried by his mother. In *Robinson v. Lowe's Home Centers, Inc.*, for example, a two-year-old child whose father put her into the child seat area of a Lowe's shopping cart was injured when the cart rolled away and hit a pothole in the Lowe's parking lot, which caused the cart to lose a wheel and flip over and break the child's arm. *Robinson v. Lowe's Home Centers, Inc.*, 2010 WL 1463045, at *1 (E.D. Mich. Apr. 13, 2010). The *Robinson* court recognized that

Michigan courts treat minors differently than adults in negligence actions. *Id*. at *4. However, the court did not consider whether the pothole was open and obvious from a child's perspective because it found that the child was under the father's control. *Id*. at *5. The father controlled the cart's movements and the child was merely the passenger. *Ibid*. Therefore, the *Robinson* court applied the traditional open and obvious analysis and found that the pothole would be open and obvious to an average person with ordinary intelligence upon casual inspection. *Ibid*.

Here, it is difficult to escape the *Robinson* court's reasoning. L.K. was not in control of his own actions because he was being carried by Jade. Whether a reasonable two year old being carried by his mother would discover the danger and appreciate the risk of harm posed by the motorcycle parking pad is immaterial. The relevant inquiry, as in *Robinson*, is whether an average person with ordinary intelligence would have discovered the elevated motorcycle pad in the parking lot upon casual inspection.

The plaintiff argues that even under the objective adult standard, the matter should go to the jury. The plaintiff relies on *Siorakes v. Target Corp.*, 2011 WL 1564616 (Mich. Ct. App. Apr. 26, 2011) to support that position. In *Siorakes*, the plaintiff fell near an uneven sidewalk in a Target parking lot that had an elevated area of less than two inches. *Id*. at *1. The plaintiff's husband testified that the elevated area appeared to have been patched creating a sloped area. *Ibid*. The trial court granted summary judgment to the defendant because it reasoned that the plaintiff was guessing that she tripped on the elevated sidewalk, and therefore the proximate cause of the plaintiff's injuries was speculative. *Ibid*. The court of appeals reversed the lower court on that issue. *Id*. at *2. The panel also considered alternate grounds of whether the condition was open and obvious (an issue not considered by the trial court). In a split decision, the panel found that a jury question existed because

the uneven pavement was difficult to discern from the pictures. *Id.* at *3. The sloped area was small and its color and contour blended with the surrounding sidewalk. *Ibid*.

Unlike *Siorakes*, the pictures in this case show a clear elevated line stretching across the motorcycle parking pad that is accentuated by a difference in the colors of the materials. L.K.'s injuries demonstrate that the elevated portion of the defendant's parking lot is a dangerous condition on its premises. Nonetheless, because Michigan's objective standard does not allow for much leeway, the condition is not "unreasonably" dangerous. "[W]hether a duty exists in a tort action is generally a question of law to be decided by the court, and when a court determines that a duty was not owed, no jury-submissible question exists." *Hoffner*, 492 Mich. at 476, 821 N.W.2d at 103. Because the condition is open and obvious, the plaintiff has not establish a duty that was breached by the defendant.

### III.

Because the defect in the defendant's parking lot was open and obvious, the plaintiff cannot establish the liability of the defendant premises owner for the injuries suffered by the minor plaintiff.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. #26] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

                                            s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

Dated: July 5, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 5, 2017.

                                        s/Deborah Tofil
                                        DEBORAH TOFIL